UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS ZAMBRANO,<br><br>Plaintiff,<br><br>v.<br><br>ERIC GOLDING, et al.,<br><br>Defendants. | Case No. 19-cv-03332-HSG<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; REQUIRING RESPONSE FROM PLAINTIFF**<br><br>Re: Dkt. No. 34 |

Plaintiff, an inmate at Pelican Bay State Prison, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Now pending before the Court is a summary judgment motion filed by defendants Golding, Blakely, Olsen, Thomas, Yang, Nasr and Kumar ("Defendants").[1] Dkt. No. 34. Plaintiff has filed an opposition, Dkt. No. 48, and Defendants have filed a reply, Dkt. No. 49.

**DISCUSSION**

**I.    Summary Judgment Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

---

[1] The amended complaint names Amy Olsen, Laurie Thomas, Jasmine Yang, Elise Williams, Kathrine Blakeley, John Kim, Rhoda Nasr, Devinder Kumar and Eric Golding as defendants. Dkt. No. 15. Defendants Williams and Kim do not join in the pending summary judgment motion. Defendant Elise Williams was terminated from this action on July 2, 2020, because she is deceased. Dkt. No. 33. Defendant John Kim appeared in this action on July 2, 2021. Dkt. No. 47.

1     A court shall grant summary judgment "against a party who fails to make a showing

2  sufficient to establish the existence of an element essential to that party's case, and on which that

3  party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an

4  essential element of the nonmoving party's case necessarily renders all other facts immaterial."

5  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial

6  burden of identifying those portions of the record that demonstrate the absence of a genuine issue

7  of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the

8  pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and

9  admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'"  *See*

10 *id.* at 324 (citing Fed. R. Civ. P. 56(e)).

11    For purposes of summary judgment, the court must view the evidence in the light most

12 favorable to the nonmoving party; if the evidence produced by the moving party conflicts with

13 evidence produced by the nonmoving party, the court must assume the truth of the evidence

14 submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

15 The court's function on a summary judgment motion is not to make credibility determinations or

16 weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv., Inc., v.*

17 *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**II.    Legal Standard for Deliberate Indifference to Serious Medical Needs**

19    Deliberate indifference to a prisoner's serious medical needs violates the Eighth

20 Amendment's proscription against cruel and unusual punishment.  *See Estelle v. Gamble*, 429 U.S.

21 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on*

22 *other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en

23 banc).  A determination of "deliberate indifference" involves an examination of two elements:

24 the seriousness of the prisoner's medical need and the nature of the defendant's response to that

25 need.  *See McGuckin*, 974 F.2d at 1059.  A "serious" medical need exists if the failure to treat a

26 prisoner's condition could result in further significant injury or the "unnecessary and wanton

27 infliction of pain."  *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104).  The existence

28 of an injury that a reasonable doctor or patient would find important and worthy of comment or

2

treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. *See McGuckin*, 974 F.2d at 1060. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. *See Toguchi*, 391 F.3d at 1060.

### III.    Factual Background

#### A.    July 27-28, 2018

On July 27, 2018, Plaintiff was seen at the PBSP yard clinic, also referred to as the triage and treatment area ("TTA"). The parties disagree as to why Plaintiff was referred to TTA and what medical issues he reported upon admission.

Plaintiff makes the following allegations.

On July 27, 2018, Plaintiff suffered an injury to his right knee and leg and was "man down" with a pain level of 10 out of 10. That day, defendant Kumar examined him, diagnosed him with a torn medial meniscus, and referred him to TTA for treatment. At TTA, Plaintiff

1   requested that his right knee and leg be evaluated for treatment.  Defendants Thomas, Yang and
2   Olsen ignored these requests for treatment.  Defendants Thomas and Olsen falsely claimed that
3   Plaintiff had safety concerns about returning to the yard and admitted Plaintiff to TTA for this
4   reason.  When Plaintiff pressed the call button to indicate that he was "man down," defendant
5   Blakely ignored the call for help and refused to treat him.  Instead, she notified the nurses on duty,
6   defendants Yang and Nasr.  When Plaintiff was discharged on July 28, 2018, defendant Thomas
7   deliberately and incorrectly discharged him with a diagnosis of stress and recommended stress
8   management.  Dkt. No. 48 at 1-7.

9        Defendants make the following representations, based upon what was reported in
10  Plaintiff's medical notes.

11       Defendants were familiar with Plaintiff prior to July 27, 2018, because he had a history of
12  hostile engagements with medical staff when they refused his repeated attempts to obtain
13  narcotics, including Percocet, Tramadol, and T3 (Tylenol with codeine) when he presented with
14  symptoms that would justify prescribing narcotics.  *See*, *e.g.*, Dkt. No. 34-4 at 1–5  ("Kumar
15  Decl.") ¶ 8 and Dkt. No. 34-4 at 86, 152, 155-56, 159, 172; Dkt. No. 34-3 at 1-3 ("Golding Decl.")
16  ¶ 6; Dkt. No. 34-8 at 1-3 ("Yang Decl.") ¶¶ 6-7.

17       On July 27, 2018, at 10:30 a.m., defendant Kumar recorded that Plaintiff complained of
18  blurry vision, nausea, abdominal pain, headache, neck pain, and right leg pain.  Defendant Kumar
19  transferred Plaintiff to TTA as "urgent."  Dkt. No. 34-4 at 55, 56.  Upon arrival at TTA, Plaintiff's
20  primary complaint was abdominal pain.  After admission, Plaintiff added vague complaints of pain
21  in his neck and back.  Plaintiff's primary complaint was not pain in his right leg but other general
22  pain conditions.  Dkt. No. 34-6 at 1-3 ("Olsen Decl.") ¶ 6; Yang Decl. ¶ 6; Kumar Decl. ¶ 8.
23  When questioned about specific pain issues, Plaintiff was avoidant, did not point to anything
24  specific, referred to general areas, and changed the specific location each time.  Dkt. No. 34-4 at
25  174.  Plaintiff told intake: "I will go man down right here if all my pain issues are not taken care
26  of."  Then Plaintiff reported blood in his urine.  He then claimed that the blood was in his ejaculate
27  and not his urine.  Dkt. No. 34-7 at 9.  A urine dip was negative for blood.  Dkt. No. 34-7 at 9.
28  There were no clinical findings to support his complaints.  Dkt. No. 34-7 at 9; Dkt. No. 34-4 at 55.

1      Plaintiff repeatedly stated which narcotics were effective for him: Tramadol, Percocet, and
2  Vicodin, and requested these narcotics. Dkt. No. 34-7 at 9. The examining nurse noted that
3  Plaintiff's prior chart notes indicated that Plaintiff had previously made requests for narcotics to at
4  least four different physicians. Dkt. No. 34-7 at 9. Plaintiff was prescribed a two-day course of
5  650 mg of acetaminophen, twice daily, and a one-time dose of 400 mg of ibuprofen. Dkt. No. 34-
6  4 at 34.

7      Around noon, Plaintiff was clinically cleared and discharged from the TTA, but he refused
8  to return the yard. Dkt. No. 34-4 at 55. Plaintiff stated that he would go "man down" if his pain
9  issues were not met. Dkt. No. 34-4 at 175. Plaintiff was placed in a holding cell due to a medical
10 emergency unrelated to him. Two hours later, Plaintiff was advised that he would be escorted to
11 his housing. Plaintiff went "man down" and was escorted back to TTA. Dkt. No. 34-4 at 55.

12     Around 5:22 p.m. that day, defendant RN Yang took Plaintiff's vitals and recorded that
13 Plaintiff reported having pain at a 10/10 scale; that the primary pain was in the left neck with
14 secondary pain in the head; and that Plaintiff was agitated and anxious, but cooperative. Dkt. No.
15 34-5 at 7-9. Around 6:24 p.m., Plaintiff was admitted for observation overnight. Defendant RN
16 Yang reported that Plaintiff complained of severe pain, stating that his chronic pain was getting
17 worse; that he refused his dinner due to feeling nauseous with no appetite; requested urgent
18 treatment for his severe pain; had anxiety; and demanded an "IV or something strong" or to
19 immediately see a doctor. Defendant RN Yang further reported that Plaintiff was talking and
20 breathing easily with no shortness of breath, no confusion, no grimacing or guarding, and no chills
21 or fever. Dkt. No. 34-5 at 12. At 7:36 p.m., defendant RN Yang recorded that Plaintiff had
22 refused Tylenol and ibuprofen and was demanding an injection of narcotics; and that Plaintiff
23 became upset, banged on the door, and begged to be discharged back to housing or he would go
24 "man down" inside the cell. Custody staff and the lead nurse spoke to Plaintiff at his cell. Dkt.
25 No. 34-4 at 29; Dkt. No. 34-5 at 11. At 7:51 p.m., Plaintiff again refused Tylenol and stated that
26 he wanted T3 for his chronic pain as promised.[2] Dkt. No. 34-4 at 39; Dkt. No. 34-5 at 11. At 9:12

---

[2] Plaintiff's medical records indicate that defendant Williams prescribed Plaintiff 400 mg of ibuprofen on July 27, 2018 at 5:52 p.m. and it was administered to him at 6 p.m. Dkt. No. 34-4 at

5

1   p.m., defendant Yang recorded that Plaintiff was witnessed getting out of bed quickly and with no
2   difficulty; was argumentative and upset; continued to ask for narcotics; stated that he been
3   promised narcotics if admitted to the specialty clinic; refused offers of his current prescription of
4   acetaminophen; and repeated the same questions. Dkt. No. 34-5 at 9, 11. At 10:00 p.m.,
5   defendant RN Kim recorded that Plaintiff reported having pain at a 10/10 scale; that the pain was
6   primarily on the left side of the neck, with secondary pain in the head; that Plaintiff did not show
7   any acute distress; that Plaintiff was angry, hostile, and argumentative; that Plaintiff did not want
8   to communicate with medical staff; and that Plaintiff kept insisting on stronger medication.
9   Defendant RN Kim notified the doctor of Plaintiff's complaint of 10/10 leg pain and generalized
10  body, neck, and headache pain. Plaintiff stood at the door and requested to speak to the custody
11  sergeant. Plaintiff stood at his door until midnight. Dkt. No. 34-5 at 7-9, 11, 14.

12  At approximately 10:12 p.m. on July 27, 2018, Plaintiff pressed his call light. Defendant
13  Blakely answered and Plaintiff told her he was "man down," sat on the toilet, and said that he
14  could not stand the pain. Defendant Blakely notified the nurse. Dkt. No. 34-2. Approximately
15  10:55 p.m., Plaintiff again pressed his call light. Defendant Blakely answered and found Plaintiff
16  sitting on the toilet. Plaintiff told her that he was "man down;" that his leg was swollen; that he
17  could not stand the pain; and that he had not received any kind of ice pack or anything for the
18  pain. Defendant Blakely notified the nurse. Dkt. No. 34-2.

19  On July 28, 2018, at 7:30 a.m., Plaintiff again refused the acetaminophen. At the 11:00
20  a.m. vital signs check by defendant Nasr, Plaintiff did not report actual or suspected pain and
21  indicated that he did not want to communicate with medical staff. Dkt. No. 34-4 at 46. At the
22  3:35 p.m. vital signs check, Plaintiff refused to answer defendant Olsen's question as to whether
23  he was experiencing actual or suspected pain, saying, "Just take my vitals, I'll talk to them out on
24  the yard about it. I just want to get out of here." Dkt. No. 34-4 at 44. At discharge, Plaintiff told
25  defendant Williams, "I have nothing wrong, can I go back to the yard?" Dkt. No. 34-4 at 35.
26  //

---

31. However, neither party discusses any pain medication being offered to Plaintiff.

6

**B.     July 29, 2018 – January 25, 2019**

The bulk of Plaintiff's allegations regarding his treatment after his July 27-28 stay at TTA and overnight are in his complaint. Plaintiff's opposition primarily discusses the treatment provided on July 27-28, 2018, with the exception of some additional allegations against defendants Golding and Kumar.

In his complaint, Plaintiff makes the following allegations regarding treatment after July 28, 2018, and before January 29, 2019, when he received the first surgery for his right knee. Between August 1, 2018 and November 5, 2018, Plaintiff repeatedly put in sick call slips to obtain medical treatment for his leg injury but defendants Kumar and Golding ignored him, refused to see him, minimized his pain, and harassed him for seeking medical treatment. On November 5, 2018, Plaintiff had an MRI and learned that he had a torn medial meniscus. Defendant Kumar read the MRI that day and minimized his medical condition by describing the tear as just a small tear. On January 25, 2019, Plaintiff had surgery to repair the meniscus. The surgeon stated that the meniscus was completely torn. When other inmates have been seen by defendant Kumar for sports injuries, defendant Kumar has offered them MRIs and given them medical equipment, and, if needed, ensured that they received surgery within two months of the injury. However, defendant Kumar did not provide Plaintiff with medical equipment for over six months, forcing him to walk with an injured leg without equipment. Plaintiff currently requires additional surgery because of Defendants' failure to provide him with medical treatment. Dkt. No 15. at 5-6.

In his opposition, Plaintiff makes the following additional allegations regarding defendants Golding and Kumar.

Defendant Golding refused to see him or evaluate his complaint of right knee pain. Instead, defendant Golding harassed and taunted Plaintiff, saying that the bruising on Plaintiff's right knee looked like a birth mark. Defendant Golding then kicked Plaintiff out of the examination room, saying that he could refuse to see Plaintiff for personal reasons. In doing so, defendant Golding delayed Plaintiff's access to medical treatment for his serious medical needs and caused "unnecessary and wanton infliction of pain and took an easier and less efficacious course of treatment by giving me no treatment at all and kicking me out." Dkt. No. 48 at 6.

Plaintiff does not provide any dates for the alleged interactions with defendant Golding.

Defendant Kumar forced Plaintiff to suffer unnecessary pain from July 27, 2018 to January 25, 2019 because he did not give Plaintiff any medical equipment, such as a knee brace, cane, or crutches. Dkt. No. 48 at 7.

Defendants describe Plaintiff's treatment after July 28, 2018 as follows. Plaintiff has not disputed the specific details below, except as specified above.

Sometime between July 28, 2018 and August 1, 2018, Defendants determined that Plaintiff had injured his right knee. Plaintiff's knee was x-rayed on August 1, 2018, four days after the alleged injury. The x-ray indicated no degenerative joint changes, no acute fracture or dislocation, and minimal joint effusion. Dkt. No. 34-4 at 23, 177. Following the x-ray, Plaintiff was prescribed a course of physical therapy. On October 16, 2018, physical therapy was stopped because it was determined that the physical therapy was not leading to improvement. Dkt. No. 34-4 at 109. On October 23, 2018, Plaintiff had an MRI which showed a torn right medial meniscus. The MRI characterized the tear as small. Dkt. No. 34-4 at 22, 140. Defendant Kumar put in a request for an orthopedic surgery evaluation and orthopedic surgery. Dkt. No. 34-4 at 61. On December 19, 2018, Plaintiff saw orthopedic surgeon Dr. Cross who diagnosed him with a medial meniscus tear, symptomatic mechanical pain, with only mild degenerative changes. Plaintiff opted for surgical evaluation using arthroscopic instrumentation, and Dr. Cross requested authorization for outpatient arthroscopic surgery. Dkt. No. 34-4 at 107-08. Defendant Kumar ordered the surgery referral on December 26, 2018, and surgery was performed on January 25, 2019. Dkt. No. 34-4 at 105-06, 165. At a follow-up appointment with Dr. Cross on February 28, 2019, Plaintiff asked Dr. Cross whether the delay from the time he injured his knee to the time of surgery caused increased damage to his knee. Dr. Cross informed Plaintiff that it was unlikely in this particular scenario, and that the surgery and repair of the meniscus were attempts to minimize progressive degenerative changes. Dkt. No. 34-4 at 103.

During this time period, Plaintiff was seen at least once by defendant Golding, on November 16, 2018. Defendant Golding described the appointment in the medical notes as follows:

> [Inmate/Patient] came into the office calm at first. Got weighted (sic) and sat on exam table. I asked the inmate what his concerns were today. He stated that "My leg was still hurting and his TMJ was hurting and that he was still having problem eating, oh yea my wrist is also hurting." I began to talk with the Patient when he started to raise his voice and said that this is cruel and unusual punishment you should have fixed my leg back in June (sic). The dentist won't fix my mouth, I am going to 602 the medical department for not treating their patients. At that time I attempted to have the patient calm down so that he could continue with the visit. When he did not I ask (sic) for custody to remove the patient from my office. The patient then stated that I just came here today so that I would know how to spell your name when I 602 you. The patient was then escorted from the office and the visit was over.

Dkt. No. 34-4 at 164.

## IV. Analysis

The Court finds that Defendants are entitled to summary judgment. Plaintiff has not set forth sufficient evidence that Defendants were subjectively indifferent to his right knee pain during his stay at the TTA on July 27 and 28, 2018, or from July 29, 2018 to January 25, 2019.

At summary judgment, the Court must view the record in the light most favorable to Plaintiff. Accordingly, with respect to July 27 and 28, 2018, the Court assumes that Plaintiff informed Defendants that he had right knee pain and asked that his knee be evaluated. It is undisputed that Plaintiff's right knee was not examined during this time period. However, the record indicates that Defendants kept Plaintiff for observation, observed him moving without difficulty, checked on his vitals regularly, and offered him the pain medication prescribed him. Three days after Plaintiff was discharged, Plaintiff received an x-ray on his right knee which showed no degenerative joint changes, no acute fracture or dislocation, and minimal joint effusion, indicating a need for physical therapy, which was prescribed. Nothing in the record indicates that the delay in examining the right knee harmed Plaintiff. Dr. Cross stated that it was unlikely that the delay in performing surgery caused increased damage to Plaintiff's knee. Plaintiff has not presented evidence that Defendants' choice to monitor Plaintiff for two to five days rather than immediately examine the knee was medically unacceptable under the circumstances, and there is no evidence in the record supporting such a conclusion. Nor has Plaintiff presented evidence that Defendants chose not to examine his right knee in conscious disregard of an excessive risk to his health. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (to establish Eighth Amendment

violation, plaintiff must show that course of treatment chosen by doctors was medically unacceptable under the circumstances and chosen in conscious disregard of excessive risk to plaintiff's health). Because Plaintiff has failed to address Defendants' assertion that the five-day delay in examining Plaintiff's knee was medically acceptable when Plaintiff was observed for a 24-hour period after his complaint of knee pain, the Court may consider this fact undisputed for the purposes of this motion. Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion . . ."). The decision not to examine or evaluate the right knee prior to August 1, 2018, viewed in the context of the entire record, amounted to a difference in opinion as to medical treatment, and at most negligence, which does not violate the Eighth Amendment. *See Toguchi*, 391 F.3d at 1060; *see also Floyd v. Dang*, 577 F. App'x 696, 697 (9th Cir. 2014) (affirming grant of summary judgment because prison doctors' decision not to test prisoner-plaintiff for Hepatitis C for four years despite presence of risk factors did not violate Eighth Amendment since decision was not medically unacceptable; some evidence that showed what level of risk of Hepatitis C infection would be medically unacceptable to ignore was required to establish that reasonable jury could find that decision was outside of standard of care).

With respect to the July 29, 2018 to January 25, 2019 time period, Plaintiff's allegations regarding defendants Kumar and Golding fail to establish a triable issue of material fact as to whether these defendants were deliberately indifferent to his medical needs. Plaintiff alleges that defendant Kumar mischaracterized the tear in his medial meniscus as "small," did not offer him an MRI, did not ensure that he received surgery within two months of the injury, and did not give him a knee brace, cane, or crutches while he awaited surgery. The record shows that defendant Kumar accurately described the tear as small, as indicated by the MRI report, and provided Plaintiff with prompt care for his right knee: ordering an x-ray four days after the injury, prescribing a course of physical therapy, ordering additional x-rays and an MRI, putting in a referral for evaluation by a surgeon when the physical therapy was unsuccessful, and arranging for surgery within five months of the injury. The alleged failure to provide the specific treatment sought by Plaintiff does not violate the Eighth Amendment where defendant Kumar provided

1   other prompt treatment.  "A difference of opinion between a prisoner-patient and prison medical

2   authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662

3   F.2d 1337, 1344 (9th Cir. 1981).  Plaintiff alleges that defendant Golding refused to provide him

4   treatment and mocked him.  These allegations are vague and non-specific and cannot establish a

5   triable issue of fact as to whether defendant Golding violated the Eighth Amendment.  Plaintiff

6   does not specify what treatment he required from defendant Golding and on what dates the

7   necessary treatment was denied.  More importantly, the record indicates that Plaintiff received

8   constitutionally adequate treatment for his right knee, as described above.

## V.   Defendant John Kim

Defendant Kim has only recently appeared in this action, Dkt. No. 47, and has not yet filed a dispositive motion.  According to the record, defendant Kim's only interactions with Plaintiff was when he was seen at TTA and admitted overnight, from July 27 to 28, 2018.  The Court has already found that the medical treatment provided on those dates did not violate the Eighth Amendment.  The Court may grant summary judgment *sua sponte* if: (1) the pleadings and supporting documents, viewed in the light most favorable to the plaintiff, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c); and (2) the plaintiff receives reasonable notice that the adequacy of his claim is in question.  *See Verizon Delaware, Inc. v. Covad Comm'n Co.*, 377 F.3d 1081, 1092 (9th Cir. 2004); *Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993); *cf. Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) (holding district court on its own motion may grant motion to dismiss as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants).  The Court gives Plaintiff notice that the adequacy of his Eighth Amendment claim against defendant RN John Kim is in question.  Within twenty-eight (28) days of the date of this order, Plaintiff shall file a response with the Court addressing whether he wishes to proceed with his Eighth Amendment claim against defendant Kim.  If Plaintiff wishes to proceed with the claim, he must explain why his claim against defendant Kim is adequate.  He must support this assertion by citing to particular parts of materials in the record that indicate a genuine dispute of material fact as to whether defendant Kim

11

violated the Eighth Amendment.

## CONCLUSION

For the foregoing reasons, the Court orders as follows.

1. The Court GRANTS Defendants' motion for summary judgment. Dkt. No. 34. The Clerk is directed to terminate defendants Golding, Blakely, Olsen, Thomas, Yang, Nasr and Kumar from this action.

2. Within twenty-eight (28) days of the date of this order, Plaintiff shall file a response with the Court addressing whether he wishes to proceed with his Eighth Amendment claim against defendant Kim. If Plaintiff wishes to proceed with the claim, he must explain why his claim against defendant Kim is adequate. He must support this assertion by citing to particular parts of materials in the record that indicate a genuine dispute of material fact as to whether defendant Kim violated the Eighth Amendment.

This order terminates Dkt. No. 34.

**IT IS SO ORDERED.**

Dated: 9/20/2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge